UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEANFISH, LLC, <br> Plaintiff, <br> v. <br> DALE SIMS, et al., <br> Defendants. | Case No. 19-cv-03663-HSG <br><br> **ORDER DENYING PLAINTIFF'S TEMPORARY RESTRAINING ORDER AND DENYING PLAINTIFF'S MOTION TO SEAL** <br><br> Re: Dkt. Nos. 2, 3 |

On June 24, 2019, Plaintiff CleanFish, LLC, f/k/a Sig and Sour LLC ("CleanFish"), filed a complaint against Defendants Dale Sims, Buena Vista Seafood, LLC ("Buena Vista"), Island Sea Farms, Inc. ("ISF"), Nanci Dixon, and Paul Simpson, alleging trade secret misappropriation under federal and California law and breach of contract. Dkt. No. 1 ("Compl."). The same day, Plaintiff also applied for the immediate entry of a temporary restraining order, order for expedited discovery, and order to show cause why a preliminary injunction should not issue against Defendants. Dkt. No. 2 ("Mot."). Plaintiff filed an administrative motion to file under seal certain material used in support of its motion.

The Court has carefully considered the parties' briefs, supporting declarations, and exhibits. The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **DENIES** Plaintiff's motion for temporary restraining order and **DENIES** Plaintiff's administrative motion to file under seal.

## I. BACKGROUND

Plaintiff CleanFish is a Delaware limited liability company and is a wholesale and retail distributor of seafood. Compl. ¶ 10. Plaintiff was formerly known as Sig and Sour LLC until

approximately April 2018, when it purchased CleanFish, Inc. through an asset purchase agreement with Defendant Sims. Dkt. No. 2-1, Declaration of Michael Moniz ("Moniz Decl.") ¶¶ 1, 4–6.[1] Mr. Sims was the co-founder and President of CleanFish, Inc. and has been working in the seafood industry for approximately thirty-nine years. *Id*. ¶ 4; Dkt. No 17-1, Declaration of Dale Sims ("Sims Decl.") ¶ 1. After the acquisition, Mr. Sims continued to work for Plaintiff as a "key employee involved in sales and distribution of seafood to Plaintiff's customers." Mot. at 16.[2] On May 17, 2019, Mr. Sims formed Buena Vista, another seafood distributor company. Mot. at 17; Sims Decl. ¶ 6. In or around May 31, 2019, Mr. Sims resigned from CleanFish. *Id*. Mr. Sims maintains that after his resignation, Plaintiff attempted to persuade him to reconsider. Sims Decl. ¶ 8. Mr. Sims declined to do so and ceased working at CleanFish by June 5, 2019. *Id*. ¶ 9. While Mr. Sims returned his company cellphone to Plaintiff, he allegedly still retained the company laptop. Mot. at 17–18. Mr. Sims represents that the laptop is personal property he has owned since 2010. Sims Decl. ¶ 14.

Plaintiff has both seafood suppliers and customers, including Defendant ISF. *See* Dkt. No. 17-2, Declaration of Paul Simpson ("Simpson Decl.") ¶¶ 4–10. ISF is a British Columbia corporation that farms and supplies mussels from Canada. *Id*. ¶ 1. Defendant Dixon is an employee of ISF, and Defendant Simpson is the President. *Id*. ¶¶ 1, 3. ISF began working with Mr. Sims and CleanFish, Inc. in 2014 and continued that relationship when Plaintiff acquired CleanFish, Inc. in 2018. *Id*. ¶¶ 4–5. However, after the acquisition, Mr. Simpson avers that Plaintiff consistently paid ISF's invoices late, which was what eventually led to ISF's decision to terminate its business with Plaintiff. *Id*. ¶¶ 6–10.

Plaintiff contends that it was Mr. Sims's unlawful conduct that "disrupt[ed] and usurp[ed] [Plaintiff's] business" with ISF and other customers. Mot. at 12. Specifically, Plaintiff argues that during Mr. Sims's final weeks of employment and immediately after his resignation, he willfully misappropriated Plaintiff's "Confidential Data," defined as "detailed customer lists, purchasing

---

[1] Mr. Moniz is the Managing Director of CleanFish and has been in that position since 2018. Moniz Decl. ¶ 1.
[2] All Motion page references, Dkt. No. 2, refer to the ECF page numbers.

2

1  data, sales figures and other analysis, and detailed supplier lists, sales data and other analysis." *Id*.
2  at 12. Mr. Sims allegedly conspired with Ms. Dixon and Mr. Simpson to use the Confidential
3  Data to fulfill orders to Plaintiff's customers, thereby competing with Plaintiff. Mot. at 19. This
4  thus "divert[ed] business away" from Plaintiff and caused its revenue to drop "precipitously." *Id*.
5  at 27–28.

Plaintiff argues that absent immediate injunctive relief, it will continue to "suffer irreparable injury and key evidence may be lost." Mot. 2 at 2. Plaintiff's motion seeks an order: (1) enjoining Defendants from altering, destroying, or disposing of evidence that may be related to this litigation; (2) directing a forensics expert to "clone" or "mirror image" Defendants Sims and Buena Vista's business and personal email accounts, computers, mobile devices, and computer drives; (3) directing Defendants to preserve documents related to this litigation; (4) directing Mr. Sims to return the laptop over which Plaintiff claims possession; (5) enjoining Defendants from accessing, using, disclosing, or making available Plaintiff's "confidential, proprietary, or trade secret documents, data, or information"; (6) enjoining Defendants from "directly or indirectly violating or interfering with confidentiality obligations"; (7) enjoining Defendants from "directly or indirectly soliciting, continuing to solicit, initiating contact with, any of Plaintiff's customers as of May 17, 2019"; and (8) directing Defendants to return all other documents or property that contain Plaintiff's "confidential, proprietary, or trade secret information." Mot. at 3–4. Plaintiff also seeks an expedited discovery request to subpoena non-party witnesses "on an expedited and immediate basis," along with other "discovery demands." *Id*. at 2.

## II. MOTION FOR TEMPORARY RESTRAINING ORDER

### A. Legal Standard

A temporary restraining order is intended to preserve the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 429 (1974). However, a temporary restraining order is an "extraordinary remedy" that the court should award only upon a clear showing that the plaintiff is entitled to such relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Such an order may be issued only where the moving

3

party has established: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *See id*. at 22.

Under *Winter*, a court may only grant preliminary relief upon a showing that irreparable harm is likely. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). The mere possibility of irreparable harm is insufficient to support issuance of preliminary relief, even where the other *Winter* factors weigh heavily in favor of the movant. *Id*. In *Alliance*, the Ninth Circuit explained that "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1134.

**B. Discussion**

**i. Likelihood of Success on the Merits**

Although Plaintiff's complaint alleges trade secret misappropriation and breach of contract claims, *see* Compl., Plaintiff limits its discussion of the likelihood of success to its trade secret claims. Plaintiff alleges that Defendants misappropriated its confidential and trade secret information in violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426.

The elements of trade secret misappropriation under DTSA and CUTSA are essentially the same. *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018). A plaintiff must allege: "(1) that it is the owner of a trade secret, (2) that the defendant misappropriated the trade secret, and (3) that it was damaged by the defendant's actions." *Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *4 (N.D. Cal. Dec. 20, 2018) (quotations and citation omitted); *see CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008). The DTSA and CUTSA define a trade secret as information that: (1) derives its economic value from not being generally known, and (2) is subject to reasonable measures of secrecy by its owner. *See* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). "A plaintiff seeking relief for misappropriation of trade

4

secrets must identify the trade secrets and carry the burden of showing that they exist," and "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (quotations and citations omitted).

While courts have held that customer lists may be considered trade secrets, they do not *per se* qualify as such. *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (1991). "[W]hen customer information is 'readily ascertainable through public sources,' it is less likely to be protectable." *Way.com*, 2018 WL 6704464 (citing *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997)). And a customer name on its own is only valuable "if it indicates to [competitors] the fact which they previously did not know: that those businesses use the goods or services which the competitors sell." *Abba*, 235 Cal. App. 3d at 19.

On the record presented, Plaintiff has not met its burden of identifying and establishing the existence of any trade secret. Its conclusory assertions are merely a recitation of factors courts have found persuasive when concluding that customer lists could qualify as a trade secret. *See, e.g.*, Moniz Decl. ¶¶ 24, 25. But the evidence in the record does not support Plaintiff's broad generalizations. Plaintiff's suppliers are publicly available on its own website, the key players in the seafood industry are well-known, and pricing in the industry is standard and not unique. Sims Decl. ¶¶ 11–12; Dkt. No. 17-1, Ex. B. Plaintiff offers no evidence to establish that its Confidential Data derived any sort of economic value from not being known to other persons, as the information was readily ascertainable. *See* Cal. Civ. Code § 3426.1(d) (defining a trade secret to include information that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy").

Even if Plaintiff's alleged Confidential Data could somehow qualify as trade secrets, Plaintiff's evidence contrasts sharply with the type of detailed and specific showing courts have found sufficient to find that defendants were misappropriating trade secrets. *See, e.g. H.Q. Milton,*

5

*Inc. v. Webster*, No. 17-CV-06598-PJH, 2017 WL 5625929, at *2 (N.D. Cal. Nov. 22, 2017) (evidence of messages from defendants expressly acknowledging their conduct was improper); *Shutterfly, Inc. v. Foreverarts, Inc*., 2012 WL 2911887 (N.D. Cal. Jul. 13, 2012) (evidence of control logs establishing defendant had accessed and downloaded confidential information). Plaintiff's evidence is inconclusive at best. The only specific evidence it proffers as proof of Defendants' "nefarious activity" is a list of mussel orders that Mr. Sims allegedly copied from a handwritten list of orders Plaintiff received on May 31, 2019. Mot. at 19–20; Dkt. No. 3-4, Exs. 7, 8. But both Mr. Sims's and Mr. Simpson's explanations, which the Court finds credible at this stage, establish that an employee of Plaintiff's asked Mr. Sims to fulfill those orders through ISF and Buena Vista because Plaintiff no longer had a mussel supplier. Sims Decl. ¶¶ 5–7; Simpson Decl. ¶ 12. That employee provided Mr. Sims's number to those customers and directed them to contact Mr. Sims. Sims Decl. ¶ 5. The Court also finds compelling that Defendants, under penalty of perjury, affirmed that they did not download or use any of Plaintiff's purported Confidential Data, as Mr. Sims already knows all the suppliers and customers based on his thirty-nine years of experience in the industry (and he had a pre-existing relationship with many of them). *Id*. ¶¶ 11, 13; Simpson Decl. ¶¶ 10–14. Mr. Sims also avers that the laptop Plaintiff claims possession over is actually his own personal laptop that he has owned since 2010. Sims Decl. ¶ 14.

At this stage, based on the evidence presented, Plaintiff has not demonstrated that it is entitled to the extraordinary remedy of a temporary restraining order. Conclusory allegations alone are not sufficient to demonstrate a likelihood of success on the merits. *See, e.g., Sunbelt Rentals, Inc. v. Victor*, 2014 WL 492364, at *6 (N.D. Cal. Feb. 5, 2014). Accordingly, Plaintiff has not demonstrated that it is likely to prevail against any Defendant under the DSTA or CUSTA.

### ii. Likelihood of Irreparable Harm

"A plaintiff who seeks preliminary injunctive relief must show 'that irreparable injury is likely in the absence of an injunction.'" *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012) (quoting *Winter*, 555 U.S. at 22); *Alliance*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary

6

1   injunction.""). "Speculative injury does not constitute irreparable injury." *Goldie's Bookstore v.*
2   *Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).

3   Plaintiff argues that it will suffer irreparable harm absent immediate injunctive relief
4   because its "ongoing viability is now at-issue [sic]" and Defendants have caused irreparable
5   damage to Plaintiff's "customer goodwill and relationships." Mot. at 27–28. The Court is not
6   persuaded. "The fact that the alleged harm is primarily in the form of lost customers and business
7   goodwill, which at least in theory may be compensated by damages, weighs against [a plaintiff's]
8   claim of irreparable harm." *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF (PVT),
9   2010 WL 1028254, at *8 (N.D. Cal. Mar. 18, 2010) (citing *Sampson v. Murray*, 415 U.S. 61, 90
10  (1974)). And Plaintiff has not shown that Defendants engaged in any unlawful activity. If
11  Plaintiff lost any customers or goodwill, the current record supports an inference that it bears
12  primary responsibility for that fact. Simpson ¶¶ 6–10; Dkt. No. 17-1, Ex. A (letter from a supplier
13  terminating its business with Plaintiff because of late payments and noting that Mr. Sims and
14  CleanFish, Inc. never had late payments, a reflection of and "tribute to [Mr. Sims's] good
15  management and character"). Plaintiff initially acquired its customers because of their pre-
16  existing relationship with Mr. Sims, and post-resignation, Mr. Sims referred customers to Plaintiff
17  when Buena Vista was unable to fulfill orders. Sims Decl. ¶ 10; Dkt. No. 17-1, Ex. A; Simpson
18  Decl. ¶¶ 4–5.

19  In sum, Plaintiff has provided insufficient evidence to demonstrate that irreparable harm is
20  likely. For this reason too, Plaintiff's motion must be denied. *See Alliance*, 632 F.3d at 1131.

### iii. Balance of Equities and Consideration Public Interest

22  Before injunctive relief may be imposed, the movant must demonstrate that the balance of
23  equities tips in its favor. *Winter,* 55 U.S. at 20. And when exercising its discretion, a court
24  "should pay particular regard for the public consequences in employing the extraordinary remedy
25  of injunction." *Id.*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312
26  (1982)).

27  Not only does Plaintiff ask the Court to enjoin Defendants from using any purported
28  Confidential Data, it also seeks to enjoin Defendants from contacting "any of Plaintiff's customers

as of May 17, 2019." Mot. at 6. What Plaintiff is essentially requesting is for the Court to enjoin Mr. Sims from competing against Plaintiff—but Mr. Sims is permitted and encouraged to use his wealth of experience and knowledge to start his own business, especially in light of insufficient evidence establishing that he engaged in any illicit activity. Clearly, the extraordinary injunctive relief requested by Plaintiff would impose a substantial and unjustified burden on Defendants, and would contravene California's strong policy interest in protecting employees from non-compete and non-solicitation agreements. *See Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (Ct. App. 1968).[3] Plaintiff may not use the extraordinary preliminary relief sought in its motion as a way to preclude competition: that result plainly conflicts with the public interest in promoting healthy employee mobility and competition.

When weighed against the evidentiary showing offered by Plaintiff to support the extraordinary preliminary relief sought in its motion, there is no question that the balance of equities and the consideration of public interest favors denial.[4]

## III. ADMINISTRATIVE MOTION TO SEAL

### A. Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the

---

[3] Moreover, Mr. Sims recalls signing no non-compete or non-solicitation agreement with Plaintiff, nor was he ever asked to sign one. Sims Decl. ¶ 13.
[4] For the same reasons, the Court **DENIES** Plaintiff's request for expedited discovery and for an order to show cause. Because the Court finds that Plaintiff has not established any of the factors entitling it to a temporary restraining order, the Court need not address Defendants ISF, Dixon, and Simpson's personal jurisdiction argument. *See* Dkt. No. 18 at 3–7. This issue may be raised in a motion to dismiss.

general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id. at 1179* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

**B. Discussion**

Plaintiff filed an administrative motion to file under seal the unredacted Moniz Declaration and certain exhibits attached to the Moniz Declaration in support of its motion for a temporary restraining order. Dkt. No. 3. Having reviewed the administrative motion, Dkt. No. 3, and the corresponding Rule 79-5 declaration, Dkt. No. 9, the Court finds that Plaintiff has not shown a compelling reason why the material should be sealed.

The information that Plaintiff seeks to seal in the unredacted Moniz Declaration are customer names. But as explained above, a customer name by itself is not valuable unless it reveals customers that were previously unknown. *See Abba*, 235 Cal. App. 3d at 18. Exhibit 7 is the handwritten list of orders that Plaintiff alleges Defendants misappropriated; the list includes customers and what appears to be invoice numbers, but there is no pricing information or any type

9

of analysis that would reveal proprietary information about the customer and its relationship with Plaintiff. Dkt. No. 3-4, Ex. 7. The same can be said for Exhibit 8. *Id.*, Ex. 8. Exhibits 9 and 10 are invoices and also do not disclose any sensitive or proprietary information: there is no pricing "structure or analysis," but only the purchaser, product description, price per unit, and total price. *Id.*, Exs. 9, 10. None of these exhibits show the claimed "pricing structure and demand patterns" that would divulge terms of confidential contracts, negotiations, or any other proprietary and confidential business information. *See* Dkt. No. 9 ¶ 33.

## IV. CONCLUSION

Plaintiff's motion for temporary restraining order, expedited discovery, and order to show cause is **DENIED**. Dkt. No. 2. Further, the Court **DENIES** Plaintiff's administrative motion to seal the unredacted Moniz Declaration and Exhibits 7–10. Dkt. No. 3. Pursuant to Civil Local Rule 79-5(f), within seven (7) days of this order, Plaintiff must file unredacted versions of the declaration and exhibits. Or, Plaintiff may file a renewed motion to file under seal within seven (7) days of this order if it can articulate why there is a compelling reason to seal the material.

**IT IS SO ORDERED.**

Dated: 6/28/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge