UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLEANFISH, LLC,

        Plaintiff,

     v.

DALE SIMS, et al.,

        Defendants.

Case No. 19-cv-03663-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: Dkt. Nos. 22, 40, 41

Defendants Island Sea Farms, Inc. ("ISF"), Paul Simpson, and Nanci Dixon (collectively, "ISF Defendants") move to dismiss this action under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Dkt. Nos. 40, 40-1 ("ISF Mot."). Defendants Buena Vista Seafood, LLC ("Buena Vista") and Dale Sims (collectively, "BV Defendants") move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Dkt. No. 41 ("BV Mot.").

Plaintiff alleges trade secret misappropriation claims against all Defendants (First and Second Cause of Action), a breach of contract claim against Defendant Sims (Third Cause of Action), and a breach of fiduciary duty claim against Defendant Sims (Fourth Cause of Action).

For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** the motions to dismiss as follows: the Court **DENIES** Defendant ISF's motion to dismiss based on personal jurisdiction, **GRANTS WITHOUT LEAVE TO AMEND** Defendants Dixon and Simpson's motion to dismiss based on personal jurisdiction, and **GRANTS WITH LEAVE TO AMEND** the ISF Defendants' and the BV Defendants motions to dismiss the First and Second Causes of Action for failure to state a claim. The Court also **GRANTS WITH LEAVE TO AMEND** Defendant Sims' motion to dismiss the Fourth Cause of Action, and **DENIES** Defendant Sims' motion to dismiss the Third Cause of Action.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff CleanFish, LLC, f/k/a Sig and Sour LLC, is a global seafood wholesaler and importer.  Dkt. No. 35 ("FAC") ¶ 1.  In April 2018, Plaintiff purchased CleanFish, Inc. through an asset purchase agreement executed by Defendant Sims, who had co-founded CleanFish, Inc. in November 2006 and was its authorized agent.  *Id*. ¶¶ 17, 41.  After the acquisition, Defendant Sims continued to work for Plaintiff as a "key employee."  *Id*. ¶ 54.  During this time, he allegedly had "continued access to Plaintiff's Confidential Data, which included client identities and internal substantial analyses of customers' product preferences, buying patterns, practices, and pricing."  *Id*.

On or around May 17, 2019, Defendant Sims organized Buena Vista as a California limited liability company.  *Id*. ¶ 74.  Plaintiff alleges that this was for the "sole purpose of directly competing with Plaintiff in the retail and wholesale seafood distribution business."  *Id*.  Defendant Sims resigned from his employment with Plaintiff on May 31, 2019.  *Id*. ¶ 75.  Defendant Sims then allegedly collaborated with Defendant ISF, an "established and primary supplier of mussels to Plaintiff," to "misappropriate and use Plaintiff's Confidential Data, including its detailed customer list."  *Id*. ¶¶ 66, 71.

Plaintiff filed its Complaint against Defendants on June 24, 2019, alleging trade secret misappropriation and breach of contract claims.  Dkt. No. 1.  That same day, Plaintiff applied for the immediate entry of a temporary restraining order, order for expedited discovery, and order to show cause why a preliminary injunction should not issue against Defendants.  Dkt. No. 2.  The Court denied the motion.[1]  Dkt. No. 20.

---

[1] Plaintiff filed a 25-page brief in support of a renewed administrative motion to seal, which both groups of Defendants oppose.  *See* Dkt. No. 22-1.  The Court previously denied a motion to seal at the TRO stage.  Dkt. No 20.  The Court noted that the "information that Plaintiff seeks to seal … [is] customer names.  But as explained above, a customer name by itself is not valuable unless it reveals customers that were previously unknown."  *Id*. at 9.  Defendants oppose the motion because, among other reasons, the only new argument that Plaintiff raises in favor of sealing is that the customer list reveals customers that are unknown to Plaintiff's suppliers, potentially allowing those suppliers to sell to Plaintiff's customers directly.  Because Plaintiff now identifies relevant customer lists that it alleges contain information unknown to the Defendants, the Court **GRANTS** the motion to seal without prejudice to Defendants' argument that no information in the lists qualifies as a "trade secret" under Federal or State law.

2

The BV Defendants answered the FAC on July 19, 2019. Dkt. No. 28. They also filed a cross-claim against Plaintiff, alleging claims for breach of contract, trade libel, intentional interference with prospective business advantage, and negligent interference with prospective business advantage. Dkt. No. 29. Plaintiff then filed the FAC, adding a breach of fiduciary duty claim against Defendant Sims. FAC ¶¶ 116–121. Defendants now move to dismiss the FAC.

## II.    ISF DEFENDANTS' MOTION TO DISMISS: 12(B)(2)

### A.    Legal Standard

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 2018). The court may rest on the allegations in the pleadings, weigh the contents of affidavits and other evidence, or hold a hearing and resort to oral testimony. *Id.*

Although the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quotations omitted), the court must resolve conflicts between the facts contained in the parties' affidavits in plaintiff's favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie showing of facts supporting personal jurisdiction to avoid dismissal. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001).

### B.    Discussion

A district court must dismiss any defendant over which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach,* 453 F.3d at 1154. Where no applicable federal statute authorizes personal jurisdiction, as in this diversity action, a district court applies the law of the state where the court sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In

California, the long-arm statute extends jurisdiction to the limits of due process, so the resolution of the jurisdictional question turns on the federal due process analysis. *See Pebble Beach*, 453 F.3d at 1155. Due process requires that a nonresident defendant have sufficient "'minimum contacts' with the forum such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 315 (1945)).

There are two categories of personal jurisdiction a plaintiff can invoke: general and specific. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "If the defendant's activities in the forum are substantial, continuous and systematic, general jurisdiction is available; in other words, the foreign defendant is subject to suit even on matters unrelated to his or her contacts to the forum." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). The Supreme Court has held that the "paradigm forums" for the exercise of general jurisdiction are an individual's domicile and a corporation's place of incorporation and principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). This is in contrast to specific jurisdiction, which "exists when a case arises out of or relates to the defendant's contacts with the forum." *Ranza*, 793 F.3d at 1068 (quotations and citations omitted). It "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.*

Plaintiff concedes that the Court does not have general jurisdiction over the ISF Defendants. Dkt. No. 43 at 5 n.1. Therefore, the only question is whether the Court may exercise specific personal jurisdiction over the ISF Defendants. The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017) (quoting *Dole*

4

*Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citation omitted).

### i. Purposeful Direction

When a case sounds in tort, as is the case here, courts employ the "purposeful direction test," which is also referred to as the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). *Axiom*, 874 F.3d at 1069. "[T]he 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

### a. Intentional Act

In the context of *Calder*, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). "The threshold of what constitutes an intentional act is relatively low." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014)

Here, Plaintiff alleges that the ISF Defendants misappropriated confidential and trade secret information in violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426. FAC ¶¶ 87–108. The FAC alleges that the ISF Defendants "d[id] so intentionally, willfully, and maliciously." *Id.* ¶ 92. The ISF Defendants purportedly conspired with Defendant Sims to "misappropriate and use Plaintiff's Confidential Data, including its detailed customer list," *id.* ¶ 71, exchanged a text message with Defendant Sims about his customer list, *id.* ¶ 72, and then fulfilled orders to Plaintiff's customers "independently and without Plaintiff's knowledge or consent," *id.* ¶ 77. For purposes of the *Calder* test, these facts sufficiently describe an intent to perform "an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806.

The ISF Defendants contend that "Plaintiff's conclusory allegation that the ISF Defendants 'conspired' is factually deficient" and fails to show an intentional act by the ISF Defendants. Dkt. No. 45 at 4. The Court disagrees. The Court does not adjudicate factual disputes underlying the merits at this stage. Nor is the test whether the allegations plausibly plead an element of Plaintiff's claim. Although the ISF Defendants' contention that Plaintiff's allegations contain conclusory elements has some merit—especially in light of Plaintiff's claim that the ISF Defendants acquired trade secrets through "improper means" (as discussed below)—the question before the Court is simply whether Plaintiff has pled an intentional act. Accordingly, the Court finds that Plaintiff's FAC includes sufficient allegations of an intentional act. *See Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-CV-02458-HSG, 2016 WL 7475611, at *4 (N.D. Cal. Dec. 29, 2016) (finding intentional act where plaintiff alleged misappropriation of trade secrets by downloading or copying information without permission and disclosing said information to third parties).

          b. Express Aiming

Under the second element, the ISF Defendants' intentional acts must have been "expressly aimed" at California. *See Calder*, 465 U.S. at 738. Courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom*, 874 F.3d at 1070 (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)). The focus is on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.

Plaintiff asserts that the ISF Defendants expressly aimed their conduct towards California under a theory known as "individualized targeting." Dkt. No. 43 at 8 (allegation that the ISF Defendants "intentionally infringed Plaintiff's Trade Secrets, its intellectual property rights, while knowing Plaintiff's principal place of business is located in California."). The ISF Defendants are correct that under *Axiom*, the Ninth Circuit has rejected the sufficiency of the "individualized targeting" theory, without more, to establish specific jurisdiction. *Axiom*, 875 F.3d at 1070 ("Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific

jurisdiction, absent compliance with what *Walden* requires.").

However, Plaintiff pleads more than misappropriation and Defendant's knowledge of Plaintiff's location. Plaintiff also pleads that Defendant ISF "fulfill[ed] orders to Plaintiff's customers in California and elsewhere," FAC ¶ 77, was a "supplier of mussels to Plaintiff [in California] with an estimated revenue" of $1.5 million per year, *id*. ¶ 66, and "invoiced Plaintiff in California." *Id*.

At the outset, "for purposes of personal jurisdiction, '[the Court] may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" *See Alexander v. Circus Circus Enterprises, Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (citations omitted). The ISF Defendants contend that Plaintiff's allegations regarding "the ISF Defendants' supposed 'conspiracy to 'misappropriate' Plaintiff's trade secrets in California have been *directly contradicted* by the ISF Defendants' declarations." ISF Mot. at 8 (emphasis in original). The ISF Defendants offer a declaration from Defendant Simpson and assert that:

> [T]he ISF Defendants do not engage in activities in California or anywhere in the United States. As previously explained, the ISF Defendants conduct all of their business in Canada, customers accept delivery of the product within Canada, and ISF Defendants do not export directly to the United States.

ISF Mot. at 7; *see also id.* at 5 (citing Dkt. No. 17-2 ("Simpson Decl.") at ¶ 2, but in discussion of *general* rather than *specific* jurisdiction); Dkt. No. 45 at 5 (citing Simpson Decl. ¶ 2 for the propositions that "ISF has already established that it conducts all of its business in Canada," "ISF accepts its orders in Canada and delivers its product within Canada where customers can then accept delivery," "ISF does not export directly to the United States," and "ISF . . . does not sell directly into the United States, but rather ships to a facility within Canada, at which point customers purchase the product freight on board and import to wherever their own end customers are located."

The Court has reviewed Defendant Simpson's declaration, and it simply does not contradict the FAC as defense counsel asserts. Paragraph 2 of the Simpson Declaration reads, in its entirety:

> ISF farms mussels and sells to various distributors/importers and

wholesalers in Canada from where the contracts are made, mussels are shipped and payments are made to ISF. ISF has more customers than supply and insists on three strict but basic principles for all of its dealings: (1) 30-day payment terms maximum; (2) no exclusivity; and (3) no volume discounts. ISF does not deal directly with end users (e.g., restaurants, seafood stores).

Dkt. No. 17-2.

At a minimum, counsel thus significantly overstates what this paragraph actually says. Moreover, the declaration on its face makes clear that Defendant ISF has customers or distributors in California:

"At a trade show in Brussels, Belgium, Mr. Moniz and I discussed another national US importer/wholesaler that had called ISF about the possibility of purchasing its mussels to export to Texas. Mr. Moniz threatened to "cut Island Sea Farms off at the knees" if ISF supplied this company. At the same trade show meeting, Mr. Moniz further asked me **what it would take for ISF to stop supplying mussels to** one of our long term importer/distributors in *Los Angeles, California*. Mr. Moniz even asked me how much money ISF would accept in payment in return for ***ceasing to sell to its other California customer*** and made it quite clear that he wanted an exclusive supply agreement." I made it clear to Mr. Moniz that ISF does not provide exclusives and ISF's business model was that ISF would always reserve the right to sell to third parties."

*Id.* ¶ 9 (emphasis added).

At bottom, these statements do not contradict Plaintiff's allegations that Defendant ISF fulfilled orders to Plaintiff's customers in California, was a supplier of mussels to Plaintiff in California, or invoiced Plaintiff in California. And it is clear that Defendant ISF does not dispute that certain of its customers are in California. *See* ISF Mot. at 5 ("While certain of ISF's customers may be located in California, ISF conducts all of its business in Canada."). Because the Court finds that there is no conflict between Defendant Simpson's declaration and the FAC on the relevant points, Plaintiff's allegations are sufficient to establish that Defendant ISF expressly aimed its conduct at California by invoicing, supplying, and fulfilling orders to Plaintiff's customers in California. *See, e.g.*, *Avaya Inc. v. Pearce*, No. 19-cv-00565-SI, 2019 WL 6311383, at * 8 (N.D. Cal. Nov. 25, 2019) (finding, in part, that defendants expressly aimed activity at California even if "sales were made to non-California resellers who then sold the licenses to California customers" because among other factors, the "defendants were on notice that the end

8

customers were in California.") (citation omitted).[2]

Separately, the Court finds that Plaintiff has not established that Defendants Dixon and Simpson, as individuals, expressly aimed their conduct towards California. Plaintiff first supports the allegation that the ISF Defendants were conspiring with the BV Defendants in a manner expressly aimed at California by introducing a text message between Defendant Dixon and the BV Defendants. FAC ¶¶ 71-72, 84. Defendant Dixon attests that her text requesting that Defendant Sims send her "[his] customer list" was not a request for Plaintiff's customer list, but rather was a request to clarify whose information she should insert on the packing slips for the product ordered and purchased by the BV Defendants. Dkt. No. 18-2, Dixon Decl. at ¶ 8. Although some courts have held that a text message directed to a California number is enough to show express aiming, those cases involved the Telephone Consumer Protection Act, under which the text itself was the alleged conduct giving rise to the alleged harm. *See, e.g.*, *Fishman v. Subway Franchisee Advertising Fund Trust, Ltd*., 19-cv-2444-ODW (ASx), 2019 WL 6135030, at *6 (C.D. Cal. Nov. 19, 2019) (holding that text message sent to "at least one … California area code" was "purposefully directed conduct at California"); *Luna v. Shac, LLC*, C14-00607 (HRL), 2014 WL 3421514, at *4 (N.D. Cal. Jul. 14, 2014) (finding defendant expressly aimed activity at California when she intentionally sent text messages directly to cell phones with California based area codes). The Court is unaware of any non-TCPA case in which a single text message to a California area code has been found sufficient to support personal jurisdiction over an individual. *See, e.g.*, *Axiom*, 874 F.3d at 1070 (holding that courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.") (citation omitted).

---

[2] The ISF Defendants claim that they also contradict Plaintiff's substantive allegations by denying the existence of a conspiracy. *See* ISF Mot. at 8-9. But where the evidence proffered by a defendant merely rebuts a substantive allegation going to the merits of the action, rather than a foundational jurisdictional fact, defendant's evidence cannot nullify the existence of jurisdiction where the plaintiff makes the required prima facie showing. *See Loop AI Labs Inc. v. Gatti*, 2016 U.S. Dist. LEXIS 195611, at *9-10 (N.D. Cal. June 8, 2016). Plaintiff will be required to "prove the jurisdictional facts at trial by a preponderance of the evidence," *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1285 and n.2 (9th Cir. 1977), but that is a burden for a later stage in the case.

Even less is pled as to Defendant Simpson.  Plaintiff alleges that "[ISF], including its principal Simpson, through its employee Dixon, agreed to misappropriate and use Plaintiff's Confidential Data, including its detailed customer list," (FAC ¶ 71) and that "Simpson, additionally ratified and approved the aforementioned [text message by Dixon]." *Id.* ¶ 72.  These conclusory allegations do not establish that Defendants Simpson and Dixon expressly aimed their activity at California.  Defendants Simpson and Dixon both (1) reside outside of California; (2) have never been employed in California; (3) do not maintain business offices or otherwise conduct business in California; (4) do not own real or personal property in California; and (5) have not traveled to California to conduct business with the Plaintiff.  *See* Dkt. No. 18-1 at ¶¶ 2-7; Dkt. No. 18-2 at ¶¶ 2-7.

The Court therefore finds that the allegations in the FAC fail to establish that Defendant Dixon or Defendant Simpson expressly aimed their activity at California.

### c.  Foreseeable Harm

The ISF Defendants also must show that the harm caused likely would be suffered in California.  Plaintiff alleges that it suffered economic damage as a result of Defendants' willful misappropriation.  FAC ¶¶ 77, 85.  Defendants do not offer any evidence contradicting Plaintiff's allegations of harm.  The Ninth Circuit has "repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."  *CollegeSource, Inc.*, 653 F.3d at 1079.  Plaintiff has pled that the ISF Defendants knew that Plaintiff was located, and had its principal place of business, in California.  FAC ¶¶ 68-70.  As such, Plaintiff has sufficiently established that the ISF Defendants knew that the harm caused by their purported trade secret misappropriation likely would be suffered in California.  *See Enterode*, 2016 WL 7475611, at *4 ("Plaintiff submits evidence that [defendants] knew that Plaintiff was a California corporation with its principal place of business in California … As such, Plaintiff has sufficiently established that [defendants] knew that the harm caused by their trade secret misappropriation likely would be felt in California.").

The Court finds that all three elements of the *Calder* effects test have been satisfied for Defendant ISF, and that Plaintiff has adequately pled that Defendant ISF, but not Defendants

10

Dixon and Simpson, purposefully directed their conduct at California.

### ii.    Forum-Related Contacts

Next, Plaintiff must show that this lawsuit arises out of or relates to ISF's alleged trade secret misappropriation.  The Ninth Circuit relies on "a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995); *see also Harris Rutsky*, 328 F.3d at 1131; *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ("Under the 'but for' test, 'a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action.'").

Here, "but for" ISF's alleged actions to misappropriate Plaintiff's trade secrets, Plaintiff would not have suffered economic damage.  As in *Enertrode*, "'[b]ut for' Defendants' actions to misappropriate Plaintiff's trade secrets, Plaintiff would not have suffered economic damage. Through its misappropriation claim, Plaintiff has satisfied the second prong of specific jurisdiction…" 2016 WL 7475611, at *5 (citations omitted).  Accordingly, this element is satisfied.

### iii.    Reasonableness

Because Plaintiff has made a prima facie case as to the first two prongs of specific jurisdiction, "the burden thus shifts to [ISF] to show that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1060.  ISF must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Ballard*, 65 F.3d at 1500 (internal quotation marks omitted).  Courts examine seven factors to determine reasonableness:

> (1) the extent of the defendant's purposeful availment; (2) the burden on the defendant to litigate in the forum; (3) the extent of conflict with the defendant's sovereign state; (4) the forum's interest in hearing the dispute; (5) the most efficient resolution of the controversy; (6) importance to the plaintiff for convenient forum and effective relief; and (7) the existence of an alternative forum.

*Menken*, 503 F.3d at 1060; *see Burger King*, 471 U.S. at 476.

ISF's only claimed basis for its unreasonableness argument is that the burden of defending

in California "would be substantial." ISF Mot. at 9. "[T]he transportation of witnesses and evidence would weigh heavily on the ISF Defendants because ISF's operations, employees, and officers are entirely based in Canada." *Id.* While this factor weighs slightly in favor of ISF, the balance tips in favor of Plaintiff, and the exercise of jurisdiction is reasonable. Plaintiff is a California corporation, and "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured by commercial misappropriation." *Sinatra v. Na'l Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988); *see also Burger King*, 471 U.S. at 473. Further, it would be efficient to adjudicate the claims against ISF along with those of the BV Defendants, who are based in this District. It also is not clear to the Court that this would require any witnesses from Canada other than Defendants Simpson and Dixon. Given that in the Ninth Circuit, courts "emphasize the heavy burden on both domestic and foreign defendants in proving a 'compelling case' of unreasonableness to defeat jurisdiction," *Dole*, 303 F.3d at 1117, ISF has not shown that the exercise of jurisdiction here would be unreasonable.

Accordingly, the Court **DENIES** Defendant ISF's motion to dismiss for lack of jurisdiction, and **GRANTS** Defendants Simpson and Dixon's motion to dismiss for lack of jurisdiction. Based on the thinness of the current allegations, the Court dismisses Defendants Dixon and Simpson without leave to amend at this time. However, given that the substantive and jurisdictional issues are substantially intertwined, if discovery reveals a more substantial basis for the exercise of jurisdiction as to Defendants Dixon or Simpson, Plaintiff may seek leave to amend at that point. *See Data Disc*, 557 F.2d at 1285 and n.1 (noting that "[a] court may permit discovery to aid in determining whether it has in personam jurisdiction"). The Court declines in its discretion to delay the progress of the entire case for a period of "jurisdiction-only" discovery as to Defendants Dixon and Simpson, because it has found that jurisdiction exists over Defendant ISF, and discovery conducted regarding the remaining defendants is likely to soon reveal whether there is any legitimate basis for the Court to exercise jurisdiction over these two individuals who, without dispute, are citizens and residents of Canada.

### III.    MOTION TO DISMISS: 12(B)(6)

Defendants move to dismiss all claims for failure to state a claim upon which relief can be

granted. With respect to the trade secret claims (First and Second Causes of Action), Defendants argue that (1) Plaintiff fails to identify a trade secret with sufficient particularity; and (2) Plaintiff's purported trade secret is not "secret." The ISF Defendants further argue that Plaintiff fails to plead that the ISF Defendants acquired any information through improper means. Defendant Sims also moves to dismiss the breach of contract and breach of fiduciary duty causes of action against him.

### A.    Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

2000) (citation and quotations omitted).

## B. Discussion

### i. Trade Secret Misappropriation (First and Second Causes of Action)

Plaintiff alleges that Defendants misappropriated confidential and trade secret information in violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426.

The elements of trade secret misappropriation under DTSA and CUTSA are essentially the same. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018). A plaintiff must allege "(1) that it is the owner of a trade secret, (2) that the defendant misappropriated the trade secret, and (3) that it was damaged by the defendant's actions." *Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *4 (N.D. Cal. Dec. 20, 2018) (quotations and citation omitted); *see CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008). The DTSA and CUTSA define a trade secret as information that (1) derives its economic value from not being generally known, and (2) is subject to reasonable measures of secrecy by its owner. *See* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). "A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist," and "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (quotations and citations omitted) (emphasis in original).

#### a. Identification of Trade Secret

Defendants argue that Plaintiff fails to identify a trade secret with sufficient particularity. To prove that Plaintiff is the owner of a trade secret, it "need not 'spell out the details of the trade secret," but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb.

14

16, 2017) (citations and quotations omitted).

Here, Plaintiff alleges that its trade secrets "included detailed customer lists, customer purchasing data, customer sales figures and other related customer purchasing analysis and trends." FAC ¶ 3. Plaintiff attempts to slightly narrow this definition in its opposition by claiming the confidential customer identification is for a "niche clientele of end-run buyers" and continues to assert that these trade secrets include "an assortment of confidential and publicly unknown customer information such as customers' purchasing data, customer sales figures, analysis and trends, and other information as further identified in the Motion to Seal." Dkt. No. 43 at 15.

As a threshold matter, the Court cannot consider extrinsic evidence outside the FAC at the motion to dismiss stage and will not wade through the information "further identified in the Motion to Seal" to ascertain Plaintiff's trade secrets. Further, the Court finds the description of these purported "trade secrets" indistinguishable from matters of general knowledge within the parties' industry (*i.e.*, the seafood distribution business). These are broad categories of information that would be applicable to any business. Accordingly, these allegations are too high-level to give the Court or Defendants notice of the boundaries of the alleged trade secret. *See, e.g.*, *Space Data*, 2017 WL 5013363, at *2 (plaintiff's purported trade secrets, such as "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers" too high-level to identify a trade secret); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (allegations of "design review templates," "fluidics design files," and "source code files" were too broadly stated to identify trade secrets); *cf. Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (allegations describing methods of "high throughput thin-film deposition; epitaxial lift-off of the thin-film; and GaAs substrate maintenance and re-use" sufficiently particular to identify trade secrets); *Nexdoor. Com, Inc. v. Abhyanker*, No. 12-cv-5667-EMC, 2013 WL 3802526, at *5–6 (N.D. Cal. July 19, 2013) (trade secrets were sufficiently alleged in a long, generalized list that included specific items such as "email lists of inventive neighbors around Cupertino, California" and "the activation of the Lorelei neighborhood as a prime testing neighborhood for communication").

The Court also finds that Plaintiff's allegations regarding the customer lists do not sufficiently describe a trade secret, given that "client information constitutes a trade secret when that information is 'assembled over many years' and allows a company 'to tailor[ ] its service contracts and pricing to the unique needs of its customers.'" *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (citation omitted). Plaintiff alleges that efforts to identify and service a "specific client base that was environmentally conscious and sought products from sustainable methods and sources," FAC ¶ 20, made these customer lists unique. Plaintiff does allege that it took many years to assemble these customer lists (*id.*), and that the customers' identities are not public because suppliers may "undertak[e] efforts to cut CleanFish, Inc. out of the transaction" by interfacing with the customer directly. *Id.* ¶ 24. However, these broad allegations regarding the customer list are too high-level to give the Court or Defendants notice of the boundaries of any alleged trade secret, and do not separate the allegations from general knowledge within the industry. In any amended complaint, Plaintiff should plead with sufficient specificity the precise identity of the claimed lists, and the alleged basis for concluding any customer lists are trade secrets and outside the bounds of general knowledge within the industry. *See, e.g.*, *Vesta Corp. v. Amdocs Mgmt. Ltd.*, Case No. 14-cv-1142-HZ, 2018 WL 830141, at * 3 (D. Or. Feb. 12, 2018) ("The reasonable particularity standard required Plaintiff to provide specific references to concrete documents and characteristics of its trade secrets."); *Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc.*, Case No. 19-cv-00642-JLS-JDE, 2019 WL 2177262, at *7 (C.D. Cal. May 20, 2019) ("The detailed compilation of *all* [Plaintiff]'s customers, combined with specific information concerning each customer's 'billing rates, key contacts, specialized requirements and mark up rates' are protectable trade secrets.") (citation omitted) (emphasis in original); *Argo Group U.S., Inc. v. Prof'l Governmental Underwriters, Inc.*, Case No. 13-1787-AG (DFMx), 2013 WL 11327772 at 3 (C.D. Cal. Dec. 6, 2013) (noting that "customer lists can be protected trade secrets, but courts are reluctant to protect them 'to the extent they embody information which is readily available through public sources'") (citation omitted).

    b. ISF Defendants – Acquisition through Improper Means

Even if Plaintiff could establish that its Confidential Data constituted protectable trade

secrets, the ISF Defendants argue that Plaintiff fails to plead that the ISF Defendants acquired the Confidential Data through "improper means." The Court agrees.

Plaintiff's theory of misappropriation as to the ISF Defendants rests on the following four factual allegations: (1) Dixon texted Defendant Sims and asked for his customer list the day after Defendant Sims resigned, FAC ¶ 72; (2) a text message from Defendant Sims to an unknown contact named "Vinnie" stating that "I won't have my [FDA] number until next week. That is why you have the invoices packing list from Island Sea Farms & the processor Flurer Smokery," *id*. ¶ 77 (alterations in original); (3) ISF Defendants notified Plaintiff at 1:00 p.m. that they would no longer supply their mussels to the Plaintiff, and later that same day Defendant Sims resigned, *id*. ¶ 79; and (4) Plaintiff's long-time customer provided Plaintiff an invoice demonstrating that its order to Plaintiff was fulfilled by ISF, *id*. ¶ 80. Based on these factual allegations, Plaintiff asserts that the ISF Defendants and the BV Defendants "coordinate[d] a scheme whereby Sims will form and [sic] entity to steal Plaintiff's Confidential Data." *Id*. ¶ 67.

Plaintiff appears to be proceeding on a theory of indirect misappropriation as to the ISF Defendants. In other words, Plaintiff asserts that the ISF Defendants obtained Plaintiff's trade secrets improperly from Defendant Sims. To adequately plead indirect misappropriation, "the plaintiff must allege facts to show that the defendant 'knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it.'" *Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *6 (N.D. Cal. Jan. 4, 2012), *aff'd in part*, 560 F. App'x 678 (9th Cir. 2014).

Plaintiff does not allege any factual basis to support the conclusion that the ISF Defendants knew that the information Defendant Sims provided (for example, customer lists or identities) was actually Plaintiff's, knew that it was protectable, or knew that Defendant Sims acquired it through improper means. Nor does the FAC plead how the ISF Defendants could have known as much. Conclusory allegations that the ISF Defendants "contacted and continuously communicated with Sims, while Sims was employed by Plaintiff" are insufficient to plead that the ISF Defendants knew that any information Defendant Sims communicated to them contained trade secrets.

Plaintiff must allege facts that are not "'merely consistent with' both a theory of innocent market entry and the theory that Defendants used [Plaintiff's] confidential customer list, but rather 'tend[ ] to exclude' an innocent explanation." *Veronica Foods Co. v. Ecklin*, No. 16-CV-07223-JCS, 2017 WL 2806706, at \*14 (N.D. Cal. June 29, 2017) (holding that "mere fact" that competitor began selling products to stores previously supplied by plaintiff "is to be expected from a new [competitor] entering the market" and was insufficient to exclude "an innocent explanation.") (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (holding "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent" with an innocuous explanation) and *Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)); *see also Physician's Surrogacy, Inc. v. German*, 2018 WL 638229 at \* (S.D. Cal. Jan. 31, 2018) ("Plaintiff must more specifically connect allegations of misappropriation to specific Defendants' actions.") (citing *Veronica Foods*, 2017 WL 2806708, at \*14).

In *Veronica Foods*, plaintiff's allegations rested "primarily on the theory that Defendants improperly used trade secrets that [a former employee] acquired during his employment with Veronica Foods to solicit business from retail stores that previously ordered olive oil and vinegar from Veronica Foods." 2017 WL 2806706, at \*13. The Court considered plaintiff's allegations that it took steps to protect its customer list and that the "full Customer List is not available from any public source," but found that the record demonstrated that plaintiff publicized its relationship with many of its customers. *Id*. at \*14. Because of this disclosure, only some customer relationships were secret, and there was no specific allegation to support the conclusion that plaintiff's relationships with the particular stores allegedly poached were trade secrets. *Id*. Thus, the "mere fact" that defendant began selling products to stores previously supplied by plaintiff was to be expected from a new wholesaler entering the market. *Id*.

The Court in *Select Energy Services, Inc. v. Mammoth Energy Services, Inc.*, 2019 WL 1434586, at \*5 & n.5 (W.D. Ok. Mar. 29, 2019) "disagree[d] with the holding in *Veronica Foods*," noting that various customer lists and business plans are "likely to contain contact information and other information not readily available," and such lists are "likely compilations of

18

information … sufficient to avoid dismissal."  But the *Select Energy* Court did not disagree with—or address—the portion of *Veronica Foods* that held plaintiffs are obligated to plausibly exclude the innocent, marketplace explanation.  Given the risk that trade secret claims can be misused for anti-competitive purposes, the Court agrees that it is appropriate for a plaintiff to be required to allege facts that tend to exclude general knowledge or innocuous (*i.e.*, competitive marketplace) explanations.  *See Ret. Grp. v. Galante*, 176 Cal.App.4th 1226, 1237 (Cal. Ct. App. 2009) (explaining that under California law, "a former employee may use general knowledge, skill, and experience acquired in his or her former employment in competition with a former employer").

Accordingly, the Court **GRANTS** the ISF and BV Defendants' motions to dismiss the First and Second Causes of Action **WITH LEAVE TO AMEND**.

### ii.    Breach of Contract (Third Cause of Action)

Defendant Sims moves to dismiss the third cause of action for breach of contract.  "To state a claim for breach of contract, a plaintiff must plead: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'"  *Way.com*, 2018 WL 6704464, at *6 (citation omitted).

Defendant Sims argues that the CUTSA "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"  BV Mot. at 5 (citation omitted).  While true, the savings clause does not preempt "contractual remedies, whether or not based upon misappropriation of a trade secret," or "other civil remedies that are not based upon misappropriation of a trade secret."  *Silvaco Data Systems v. Intel Corp.*, 184 Cal.App. 4th 210, 233 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court,* 51 Cal.4th 310 (2011).  Because CUTSA expressly allows for claims seeking "contractual remedies, whether or not based upon misappropriation of a trade secret," Cal. Civ. Code § 3426.7(b), CUTSA preemption does not apply.  *See Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015); *see also Way.com*, 2018 WL 6704464, at *6.

Defendant Sims also argues that the breach of contract claim must fail because the alleged Confidential Data is not "sufficiently defined" or "entitled to protection."  BV Mot. at 5.  However, as alleged, the Confidentiality Agreement and Proprietary Rights and Information

Agreement require Defendant Sims to keep confidential "Proprietary Information includ[ing] but [
] not limited to … financial information … and customer lists."  FAC ¶¶ 29-30.  Proprietary
information, by the terms of the contract, does not necessarily mean information that would
qualify as a trade secret under Federal and State law, making it irrelevant whether the category
"customer lists" is too broad to satisfy the definition of a trade secret.  Accordingly, the Court
**DENIES** Defendant Sims' motion to dismiss the third cause of action.

### iii.    Breach of Fiduciary Duty (Fourth Cause of Action)

Plaintiff's Fourth Cause of Action alleges that Defendant Sims breached his duty of loyalty
to Plaintiff by "encouraging Island Sea Farms to fulfill Plaintiff's purchase orders."  FAC ¶ 120.
Defendant Sims argues that under Delaware law, he does not owe any fiduciary duty to Plaintiff.
BV Mot. at 6–7.

Under California's internal affairs doctrine, because Plaintiff is a limited liability company,
FAC ¶ 10, Delaware law controls Plaintiff's breach of fiduciary duty action.[3]  *See Boschetti v.
Pac. Bay Investments Inc.*, 32 Cal. App. 5th 1059, 1066–67 (Cal. Ct. App. 2019).  "The internal
affairs doctrine is a conflict of laws principle which recognizes that only one State should have the
authority to regulate a corporation's internal affairs—matters peculiar to the relationships among
or between the corporation and its current officers, directors, and shareholders—because otherwise
a corporation could be faced with conflicting demands.'"  *Id.* (quotations omitted).  "States
normally look to the State of a business' incorporation for the law that provides the relevant
corporate governance general standard of care."  *Id.* (citations omitted)  The internal affairs
doctrine "applies to foreign limited partnerships … and foreign limited liability companies."  *Id.*

Under Delaware law, limited liability companies are "creatures of contract" and may
"contractually expand, restrict, modify, or fully eliminate the fiduciary duties owed by the
company or its members, subject to certain limitations."  *In re Atlas Energy Res., LLC*, Case No.
CIV.A. 4589-VCN, 2010 WL 4273122, at *6 (Del. Ch. Oct. 28, 2010).  Managers of an LLC owe
default fiduciary duties unless "those duties are eliminated, restricted, or otherwise displaced by

---

[3] Plaintiff applies California law, but fails to show how California law would apply to a Delaware
LLC.  Plaintiff's cited cases, Dkt. No. 44 at 11–12, do not concern Delaware companies.

20

express language in the LLC agreement." *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 660 (Del. Ch. 2012). Absent a contractual provision stating otherwise, Delaware law imposes no default fiduciary duties on non-managing, non-controlling members of limited liability companies. *See Kuroda v. SPJS Holdings, LLC*, No. CIV.A. 4030-CC, 2010 WL 925853, at *8 (Del. Ch. Mar. 16, 2010); *Imbert v. LCM Interest Holding LLC*, No. CIV.A. 7845-ML, 2013 WL 1934563, at *7 (Del. Ch. May 7, 2013).

Accordingly, because the FAC does not plead that Defendant Sims was a member (or owner) of CleanFish, a controlling or managing member of CleanFish, or even that the LLC agreement imposed fiduciary duties on Defendant Sims, Plaintiff has failed to plead a basis on which Defendant Sims owes any fiduciary duties to CleanFish. Accordingly, this claim is **DISMISSED WITH LEAVE TO AMEND**.

## IV. CONCLUSION

The Court **DENIES** Defendant ISF's motion to dismiss based on personal jurisdiction, **GRANTS WITHOUT LEAVE TO AMEND** Defendants Dixon and Simpson's motion to dismiss based on personal jurisdiction, and **GRANTS WITH LEAVE TO AMEND** the ISF Defendants' and the BV Defendants motions to dismiss the First and Second Causes of Action for failure to state a claim. The Court also **GRANTS WITH LEAVE TO AMEND** Defendants Sims' motion to dismiss the Fourth Cause of Action, and **DENIES** Defendant Sims' motion to dismiss the Third Cause of Action.

The Court **DIRECTS** Plaintiff to file any amended complaint within 28 days of this order. Plaintiff shall not add any new claims or new parties in any amended complaint.

**IT IS SO ORDERED.**

Dated: 3/17/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge