UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEANFISH, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>DALE SIMS, et al.,<br><br>        Defendants. | Case No. 19-cv-03663-HSG<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 68, 69 |

Defendants Island Sea Farms, Inc. ("ISF"), and Buena Vista Seafood, LLC ("Buena Vista") and Dale Sims (together with Buena Vista, "BV Defendants"), move to dismiss in part Plaintiff CleanFish, LLC's ("Plaintiff") Second Amended Complaint, Dkt. No. 67 ("SAC"), under Fed. R. Civ. P. 12(b)(6). Dkt. No. 68 ("BV Mot."); Dkt. No. 69 ("ISF Mot."). Briefing on the motions is complete. Dkt. Nos 71 ("ISF Opp."); Dkt. No. 72 ("BV Opp."); Dkt. No. 73 ("BV Reply"); Dkt. No. 74 ("ISF Reply"). On June 25, 2020, the Court held a hearing on the motions. Dkt. No. 76.

Plaintiff alleges trade secret misappropriation against all Defendants (first and second cause of action), breach of contract against Defendant Sims (third cause of action),[1] and breach of fiduciary duty against Defendant Sims (fourth cause of action). Plaintiff also brings a claim called "motion for preliminary and permanent injunctive relief" (fifth cause of action).

For the reasons below, the Court **GRANTS WITHOUT LEAVE TO AMEND** Defendants' motions to dismiss the first and second causes of action, and Defendant Sims' motion to dismiss the fourth cause of action, for failure to state a claim. Plaintiff's fifth cause of action is

---

[1] On March 17, 2020, the Court denied Defendant Sims' motion to dismiss the third cause of action. Dkt. No. 65 ("MTD Order").

procedurally improper, and is also **DISMISSED WITHOUT LEAVE TO AMEND**.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a global seafood wholesaler and importer. SAC ¶ 7. Defendant ISF is a British Columbia corporation in the business of farming and supplying mussels. *Id*. ¶¶ 10, 24. ISF farms mussels and sells them to various distributors, importers, and wholesalers, but does not sell retail or distribute to retailers, restaurants, or other end users. *Id*. ¶¶ 26-27, 119. Defendant Dale Sims operated Clean Fish, Inc., a global seafood importer and wholesaler, since 2006. *Id*. ¶¶ 17, 34. In addition to the twelve years he operated Clean Fish Inc., Defendant Sims has been active in the seafood distribution industry for decades. *Id*. ¶ 23.

Around April of 2018, a company purchased the assets of Clean Fish, Inc. and set up a new business with different ownership named CleanFish, LLC. *Id*. ¶ 70. During the course of their business relationship, ISF was not privy to the identity of Plaintiff's end-customers. *Id*. ¶ 37 ("ISF was never privy to CleanFish's customer list and related customer information"). On May 31, 2019, ISF notified Plaintiff that it would no longer be supplying Plaintiff with product. *Id.* ¶ 123. On that same day, Defendant Sims tendered his resignation to Plaintiff. *Id*. Subsequently, ISF began selling its mussels to the BV Defendants. *Id*. ¶¶ 124-130.

Plaintiff alleges that ISF and the BV Defendants were conspiring to misappropriate Plaintiff's "Trade Secrets," which "include[e], but [are] not limited to, the specific details in customer lists containing key contacts, supplier and client identities with direct telephone numbers, addresses, service areas, internal substantial analyses of customers' product preferences, units purchased, buying patterns, practices, prices, purchase pricing and sales pricing, customer purchasing data, customer sales figures, analysis and trends, customer historical information and

---

[2] Plaintiff added this new fifth cause of action, styled as a "Motion for Preliminary and Permanent Injunctive Relief," in the SAC. SAC ¶¶ 185-194. Plaintiff's addition of this new "cause of action" violated the Court's MTD Order, which clearly provided that "Plaintiff shall not add any new claims or new parties in any amended complaint." MTD Order at 21. In any event, Plaintiff fails to state a cognizable claim because an injunction is a remedy, not an independent cause of action. *Zeiny v. United States*, No. 19-CV-05806-HSG, 2020 WL 496076, at *4 (N.D. Cal. Jan. 30, 2020); *see also Cuviello v. Feld Entm't, Inc*., No. 13-CV-03135-LHK, 2014 WL 1379849 (N.D. Cal. Apr. 7, 2014) (dismissing injunction cause of action with prejudice because it is not a proper cause of action). Plaintiff's fifth cause of action is improper and is dismissed.

other related customer purchasing information." *Id.* ¶ 3.

Plaintiff's factual support for its allegations is centered on a text message in which an ISF employee asked for a "customer list," and a text message from Defendant Sims stating that ISF was acting to fill orders to customers until Sims could establish the necessary credentials for his new company. *Id.* ¶¶ 118, 123.

Plaintiff alleges that ISF knew or had reason to know that the "customer list" provided by Sims belonged to Plaintiff, because (1) if ISF terminated its relationship with Plaintiff without Plaintiff's customer list, it would have lost revenue, and (2) ISF knew that Defendant Sims did not have the necessary business and import licenses at the time, and therefore needed Plaintiff's customer list from Defendant Sims in order to sell its product to an established customer base. *Id* ¶¶ 141-143. Plaintiff also relies upon an "invoice" issued to Plaintiff's customer that allegedly shows that ISF sold mussels at a price similar to that at which Plaintiffs have previously sold mussels. *Id.* ¶ 131.

Plaintiff filed its initial complaint against Defendants on June 24, 2019, alleging trade secret misappropriation and breach of contract claims. Dkt. No. 1. On August 2, 2019, Plaintiff filed its First Amended Complaint ("FAC," Dkt. No. 35) adding a breach of fiduciary duty claim against Defendant Sims. FAC ¶¶ 116–121. On March 17, 2020, the Court entered the MTD Order, granting with leave to amend the Defendants' motions to dismiss the first, second, and fourth causes of action. On April 14, 2020, Plaintiff filed the SAC.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

3

when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

## III.  DISCUSSION

### A.  Trade Secret Misappropriation (First and Second Causes of Action)

Plaintiff alleges that Defendants misappropriated confidential and trade secret information in violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426.

The elements of trade secret misappropriation under DTSA and CUTSA are essentially the same. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018). A plaintiff must allege "(1) that it is the owner of a trade secret, (2) that the defendant misappropriated the trade secret, and (3) that it was damaged by the defendant's actions." *Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *4 (N.D. Cal. Dec. 20, 2018) (quotations and citation omitted); *see CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008). The DTSA and CUTSA define a trade secret as information that (1) derives its economic value from not being generally known, and (2) is subject to reasonable measures of secrecy by its owner. *See* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). "A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist," and "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in

4

the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (quotations and citations omitted) (emphasis in original).

### i. Plaintiff Has Not Identified Trade Secrets With Sufficient Particularity

The SAC defines the purportedly misappropriated trade secrets as being:

> Trade Secrets, *including, but not limited to*, the specific details in customer lists containing key contacts, supplier and client identities with direct telephone numbers, addresses, service areas, internal substantial analyses of customers' product preferences, units purchased, buying patterns, practices, prices, purchase pricing and sales pricing, customer purchasing data, customer sales figures, analysis and trends, customer historical information and other related customer purchasing information ("Trade Secrets").

SAC ¶ 3 (emphasis added).

Defendants contend that Plaintiff has failed to identify a trade secret with sufficient particularity, and that the Court has already found that categories such as "customer lists, customer purchasing data, customer sales figures and other related customer purchasing analysis and trends" are "broad categories of information that would be applicable to any business" and, therefore "are too high level to give the Court or Defendants notice of the boundaries of the alleged trade secrets." MTD Order at 15.

To prove that Plaintiff is the owner of a trade secret, it "need not spell out the details of the trade secret," but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (citations and quotations omitted). On a motion to dismiss, the burden is on Plaintiff to identify protectable trade secrets and "[show] that they exist." *Logtale, Ltd. v. IKOR, Inc.*, No. C 11-5452 CW, 2012 WL 6044876, at *7 (N.D. Cal. Dec. 5, 2012) (quoting *MAI Sys. Corp. v. Peak Computer, Inc*., 991 F.2d 511, 522 (9th Cir. 1993)).

Plaintiff has done little to cure the deficiencies identified in the Court's prior MTD Order, instead including additional broad categories of information that do not describe the subject matter of a trade secret with the particularity required to separate them from matters of general

knowledge. Plaintiff contends, at length, that confidential customer information can constitute a trade secret. ISF Opp. at 9-11. But customer information does not by itself categorically qualify as a trade secret. *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (1991). The issue in this action has consistently been whether the non-specific customer data Plaintiff identifies can constitute a trade secret. The Court finds that the broad description of these purported "trade secrets" is indistinguishable from matters of general knowledge within the parties' industry (*i.e.*, the seafood distribution business), such that Plaintiff has not met its burden to identify protectable trade secrets.

For example, Plaintiff fails to place any limits on its alleged trade secrets by employing "including but not limited to" language within the definition of "Trade Secrets." With that definition, it remains impossible to ascertain any "boundaries within which the secret lies," let alone conduct an "'item-by-item determination' of what is and is not protectable." *Space Data Corp.*, 2017 WL 5013363, at *2 (citation omitted); *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 WL 7709655, at *4 (N.D. Cal. Apr. 13, 2015) (citation omitted).

Plaintiff's lack of specificity is also highlighted by the SAC's statement that the purported trade secrets extend beyond "customer lists" referenced in the defined term, including: 1) repeated references to "CFI's Trade Secrets, including customer lists," SAC at ¶¶ 69, 72, 74, 80, 100, 105; 2) the claim that Defendants "stole Plaintiff's Trade Secrets, including specifically in this example, the Customer order," *id*. at ¶ 134; and 3) the contention that "Plaintiff owned and possessed certain Trade Secrets, as defined above, including customer list, customer names, customer contact information and customer buying preferences and history." *Id*. at ¶¶ 151, 163.

As noted, the Court previously found these descriptions to be insufficient to plead the existence of a trade secret, and instructed Plaintiff to "plead with sufficient specificity the precise identity of the claimed lists … ." MTD Order at 15-16. In fact, the two descriptions are nearly identical, but for the addition of non-specific phrases such as customers' "addresses" and "telephone numbers." Based on these allegations, it is impossible to tell whether the information at issue is limited to the unspecified customer lists, as indicated by Plaintiff's definition, or if Plaintiff is also claiming that a single customer order, a customer's name, or customer contact

information are also individually protectable trade secrets.

The pleadings must give Defendants (and the Court) "reasonable notice of the issues which must be met at the time of trial and … provide reasonable guidance in ascertaining the scope of appropriate discovery." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252–53 (1968). Plaintiff has essentially pled that all information related to its customers and business is a trade secret. Plaintiff's failure to identify its trade secrets with the required particularity—even after filing three separate complaints—is fatal to Plaintiff's trade secrets causes of action.

### ii.     Plaintiff fails to Plead The Existence of an Actual Trade Secret

"Courts are reluctant to protect customer lists to the extent they embody information which is 'readily ascertainable' through public sources, such as business directories." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997). Plaintiff pleads that the claimed information is not "generally known" based upon the definitions within various agreements executed between the BV Defendants and Sims, which identify "customer lists" as confidential information. SAC ¶¶ 51-58.

At most, the only "customer list" identified within the SAC is a May 31st list of orders ("May 31st List"). *Id.* ¶ 128. The May 31st List is comprised of: (1) customer names and (2) confirmation that the customer buys ISF's unique mussels. *Id.* ¶ 122. Plaintiff even includes a direct excerpt of this supposedly secret information within its publicly filed SAC, a decision which at a minimum is in tension with Plaintiff's contention that such information qualifies as a trade secret. *See Top Agent Network, Inc.*, 2015 WL 7709655, at *9 (dismissing complaint because the plaintiff failed "to distinguish the allegedly shared trade secrets from non-trade secret information"); *see also Space Data Corp.*, 2017 WL 5013363, at *2 (granting motion to dismiss, in part, because "Space Data has not made clear which aspects of its technology and other information are 'part of patents and pending patent applications,' if any, and which are secret").

In any event, a customer name on its own is only valuable "if it indicates to [competitors] the fact which they previously did not know: that those businesses use the goods or services which the competitors sell." *Abba Rubber Co.*, 235 Cal. App. 3d at 19; *see Morlife, Inc.*, 56 Cal. App. 4th at 1521 (customer "lists are to be distinguished from mere identities and locations of

7

customers where anyone could easily identify the entities as potential customers."). Plaintiff's allegations regarding customer lists do not sufficiently describe a trade secret, given that "client information constitutes a trade secret when that information is 'assembled over many years' and allows a company 'to tailor[ ] its service contracts and pricing to the unique needs of its customers.'" *MAI Sys. Corp.*, 991 F.2d at 521 (citation omitted).

Plaintiff also repeats many of the allegations from the FAC, including that it "developed through extensive efforts a highly specialized customer network since its founding in satisfying a niche industry demand for product acquired only from sustainable fisheries." SAC ¶ 67. Plaintiff further repeats allegations that there existed no common industry list serve or publication that published the information. *Id.* ¶¶ 43-45. Knowledge of the identities of the customers that buy from a particular provider of goods can be of value to that provider's competitors, if it was not previously generally known that those businesses purchase the goods which the competitors sell. *Abba Rubber Co*., 235 Cal. App. 3d at 19 ("The critical factual issue is whether it is generally known that the businesses on the plaintiff's customer list are consumers of rubber rollers. If that fact is known to competing suppliers of rubber rollers, then the fact that those businesses are customers of the plaintiff is not a trade secret. However, if it is not known that those businesses use rubber rollers, then their identity as plaintiff's customers is a trade secret.").

It is for this reason that client information can constitute a trade secret, but only under specific and narrow circumstances. *See, e.g.*, *Vesta Corp. v. Amdocs Mgmt. Ltd.*, Case No. 14-cv-1142-HZ, 2018 WL 830141, at * 3 (D. Or. Feb. 12, 2018) ("The reasonable particularity standard required Plaintiff to provide specific references to concrete documents and characteristics of its trade secrets."); *Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc.*, Case No. 19-cv-00642-JLS-JDE, 2019 WL 2177262, at *7 (C.D. Cal. May 20, 2019) ("The detailed compilation of *all* [Plaintiff]'s customers, combined with specific information concerning each customer's 'billing rates, key contacts, specialized requirements and mark up rates' are protectable trade secrets.") (citation omitted) (emphasis in original); *Argo Group U.S., Inc. v. Prof'l Governmental Underwriters, Inc.*, No. 13-1787-AG (DFMx), 2013 WL 11327772 at 3 (C.D. Cal. Dec. 6, 2013) (noting that "customer lists can be protected trade secrets, but courts are reluctant to protect them

8

'to the extent they embody information which is readily available through public sources'") (citation omitted).

Here, taking all of Plaintiff's allegations as true, the Court finds that Plaintiff has failed to plausibly plead that the mere identity of its customers constitutes a trade secret.

### iii. Improper Means

Even if Plaintiff could establish that its customer data constituted protectable trade secrets, Defendants contend that Plaintiff fails to plead that the ISF Defendants acquired that information through "improper means." The Court agrees.

Misappropriation is defined under both federal and state law as "improper acquisition of a trade secret or disclosure of a trade secret or use of a trade secret." *See Agency Solutions.com LLC v. TriZetto Group, Inc*., 819 F. Supp. 2d 1001, 1026 (E.D. Cal. 2011); *see* U.S.C. § 1839(5); *see also* Cal. Civ. Code § 3426.1(b). "The term 'improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); *see also* Cal. Civ. Code § 3426.1(a). The DTSA also clarifies that "improper means . . . does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6)(B). As with the other elements of misappropriation, Plaintiff may not rely on "conclusory, formulaic allegation[s]" to establish the element of misappropriation. *Epicor Software Corp. v. Alternative Tech. Sols., Inc*., No. SACV 13-00448-CJC(RNBx), 2013 WL 12130024, at *3 (C.D. Cal. Dec. 2, 2013).

Plaintiff again appears to be proceeding on a theory of indirect misappropriation as to the ISF Defendants. In other words, Plaintiff asserts that the ISF Defendants obtained Plaintiff's trade secrets improperly from Defendant Sims. To adequately plead indirect misappropriation, "the plaintiff must allege facts to show that the defendant 'knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it.'" *Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *6 (N.D. Cal. Jan. 4, 2012), *aff'd in part*, 560 F. App'x 678 (9th Cir. 2014).

Plaintiff continues to rest its theory of misappropriation as to the ISF Defendants on four factual allegations: (1) Dixon texted Defendant Sims and asked for his customer list the day after Defendant Sims resigned, SAC ¶ 106; (2) Defendant Sims sent a text message to an unknown contact named "Vinnie" stating that "I won't have my [FDA] number until next week. That is why you have the invoices packing list from Island Sea Farms & the processor Flurer Smokery," *id*. ¶ 118 (alterations in original); (3) ISF Defendants notified Plaintiff at 1:00 p.m. that they would no longer supply their mussels to the Plaintiff, and later that same day Defendant Sims resigned, *id*. ¶ 123; and (4) Plaintiff's long-time customer provided Plaintiff an invoice demonstrating that its order to Plaintiff was fulfilled by ISF, *id*. ¶ 131. Based on these factual allegations, Plaintiff asserts that the ISF Defendants and the BV Defendants "coordinate[d] a scheme whereby Sims will form and [sic] entity to steal Plaintiff's Confidential Data." *Id*. ¶ 101.

However, these factual allegations do not "support the conclusion that [ISF] knew that the information Defendant Sims provided (for example, customer lists or identities) was actually Plaintiff's, knew that it was protectable, or knew that Defendant Sims acquired it through improper means." MTD Order at 17.

Plaintiff now alleges that ISF knew or had reason to know that the "customer list" provided by Sims belonged to Plaintiff because (1) if ISF would have discontinued business with Plaintiff without having the customer list, it would have lost revenue (presumably because ISF would not have otherwise been able to sell its product); and (2) ISF knew that Defendant Sims did not have the necessary business and import licenses at the time, and therefore, ISF knew it needed Plaintiff's customer list in order to sell its specialty mussels to an established customer base. SAC ¶¶ 141- 143.

These conclusory allegations remain unsupported by facts sufficient to establish that ISF knew, or should have known, that the BV Defendants allegedly had acquired any information through improper means. First, Plaintiff asserts that throughout the parties' business relationship ISF "was never privy to CleanFish's customer list." *Id.* ¶ 37. But as pled, this means that ISF would not plausibly have any reason to know that the customer list it received was supposedly stolen from Plaintiff. Second, Plaintiff concedes that Defendant Sims worked within the seafood

10

distribution industry for decades, including the twelve years he operated his own company before selling it to Plaintiff. *Id.* ¶ 17-23.  These allegations do not exclude an innocent theory of market entry.  Rather, these facts equally support Defendants' position that when provided a customer list by Defendant Sims, ISF was not aware that the identified customers previously bought from Plaintiff.  Instead, an equally plausible (if not more plausible) innocent theory is that ISF was commencing a business relationship with, as Plaintiff concedes, an industry expert—Defendant Sims—with decades of relevant experience.  Plaintiff's allegations continue to indicate nothing more than the typical business practices of a nonexclusive seafood wholesaler.  *See, e.g.*, *Veronica Foods Co. v. Ecklin*, No. 16-CV-07223-JCS, 2017 WL 2806706, at *8 (N.D. Cal. June 29, 2017) (Plaintiff must allege facts that are not "'merely consistent with' both a theory of innocent market entry and the theory that Defendants used [Plaintiff's] confidential customer list, but rather 'tend[ ] to exclude' an innocent explanation."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) ("plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible").[3]  Plaintiff's failure to exclude an innocent explanation as to the manner in which ISF obtained the materials alleged also renders the DTSA and CUTSA claims subject to dismissal.

*\*\*\**

Accordingly, the Court **GRANTS** the ISF and BV Defendants' motions to dismiss the first and second causes of action **WITHOUT LEAVE TO AMEND**.

---

[3] The Court in *Select Energy Services, Inc. v. Mammoth Energy Services, Inc.*, 2019 WL 1434586, at *5 & n.5 (W.D. Ok. Mar. 29, 2019) "disagree[d] with the holding in *Veronica Foods*," noting that various customer lists and business plans are "likely to contain contact information and other information not readily available," and such lists are "likely compilations of information … sufficient to avoid dismissal."  But the *Select Energy* Court did not disagree with—or address— the portion of *Veronica Foods* that held plaintiffs are obligated to plausibly exclude the innocent, marketplace explanation.  Given the risk that trade secret claims can be misused for anti-competitive purposes, the Court agrees that it is appropriate for a plaintiff to be required to allege facts that tend to exclude general knowledge or innocuous (*i.e.*, competitive marketplace) explanations.  *See Ret. Grp. v. Galante*, 176 Cal.App.4th 1226, 1237 (Cal. Ct. App. 2009) (explaining that under California law, "a former employee may use general knowledge, skill, and experience acquired in his or her former employment in competition with a former employer").

11

### B. Breach of Fiduciary Duty (Fourth Cause of Action)

Plaintiff's fourth cause of action alleges that Defendant Sims breached his duty of loyalty to Plaintiff by "encouraging Island Sea Farms to fulfill Plaintiff's purchase orders." SAC ¶ 183.

Under California's internal affairs doctrine, because Plaintiff is a limited liability company, *id.* ¶ 6, Delaware law controls Plaintiff's breach of fiduciary duty action.[4] *See Boschetti v. Pac. Bay Investments Inc.*, 32 Cal. App. 5th 1059, 1066–67 (Cal. Ct. App. 2019). "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.'" *Id*. (quotations omitted). "States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care." *Id*. (citations omitted). The internal affairs doctrine "applies to foreign limited partnerships … and foreign limited liability companies." *Id*.

Under Delaware law, limited liability companies are "creatures of contract" and may "contractually expand, restrict, modify, or fully eliminate the fiduciary duties owed by the company or its members, subject to certain limitations." *In re Atlas Energy Res., LLC*, Case No. CIV.A. 4589-VCN, 2010 WL 4273122, at *6 (Del. Ch. Oct. 28, 2010). Managers of an LLC owe default fiduciary duties unless "those duties are eliminated, restricted, or otherwise displaced by express language in the LLC agreement." *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 660 (Del. Ch. 2012). Absent a contractual provision stating otherwise, Delaware law imposes no default fiduciary duties on non-managing, non-controlling members of limited liability companies. *See Kuroda v. SPJS Holdings, LLC*, No. CIV.A. 4030-CC, 2010 WL 925853, at *8 (Del. Ch. Mar. 16, 2010); *Imbert v. LCM Interest Holding LLC*, No. CIV.A. 7845-ML, 2013 WL 1934563, at *7 (Del. Ch. May 7, 2013).

The SAC's sole allegation is that "Sims is a 5% ownership interest holder of Plaintiff" and

---

[4] The Court previously found that Plaintiff's breach of fiduciary duty cause of action was governed by Delaware law pursuant to the internal affairs doctrine. MTD Order at 20-21. Plaintiff, however, again relies on California law, but fails to explain why California law would apply to a Delaware LLC. Plaintiff's cited cases, BV Opp. at 12–14, do not concern Delaware companies.

that "[a]s a 5% ownership interest holder in Plaintiff, Sims owed a duty of loyalty to Plaintiff and Plaintiff's members." SAC ¶¶ 180-181. However, under Delaware law, the fact that Sims held a 5% ownership interest in Plaintiff does not establish that he owed it a fiduciary duty, absent allegations that Sims was an owner or controlling member in CleanFish, or that a contractual provision established a fiduciary duty. *See Kuroda v. SPJS Holdings, LLC.*, 2010 WL 925853 at \*8. The SAC does not plead that Sims was an owner or controlling member of Plaintiff, or the existence of a contractual provision establishing a fiduciary duty. Therefore, the SAC fails to plead the existence of a fiduciary duty.

Because Plaintiff already has had an opportunity to plead sufficient facts to support its claim, and failed, any further amendment would be futile. Accordingly, this claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

## IV.  CONCLUSION

For the reasons above, the Court **GRANTS WITHOUT LEAVE TO AMEND** Defendants motion to dismiss the first and second causes of action, and Defendant Sims' motion to dismiss the fourth cause of action. Plaintiff's fifth cause of action is procedurally improper, and is also **DISMISSED.**

The Court further sets a telephonic further case management conference for September 1, 2020 at 2:00p.m. Plaintiff and Defendant Sims are directed to meet and confer and then file by August 25, 2020 a joint case management statement detailing the parties' proposed schedule for the prompt resolution of the remainder of the case. All counsel shall use the following dial-in information to access the call: Dial-In: 888-808-6929/Passcode: 6064255. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The parties are further advised to ensure that the Court can hear and understand them clearly before speaking at length.

**IT IS SO ORDERED.**

Dated:  8/14/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge